**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

NEIL HEUER, on behalf of himself and all others similarly situated,

      Case No.: _____

   Plaintiff,

vs.

NISSAN NORTH AMERICA INC.,     **DEMAND FOR JURY TRIAL**

   Defendant.
_____/

## CLASS ACTION COMPLAINT

### NATURE OF THE CASE

1.    Plaintiff brings this putative class action on behalf of himself and all other owners of Nissan GT-Rs. Nissan sold the vehicles without first telling consumers that Nissan had opted to install dashboards in the vehicles that do not withstand exposure to sunlight and that melt, emit a noxious chemical smell, and take on a reflective quality. When the dashboards become reflective, drivers trying to see through the windshield have to struggle to see past the image of the dashboard in the windshield. When the sun or another bright light catches the dashboard at the right angle, the glare off of a melted dashboard can significantly obstruct the driver's view, thus endangering everyone on the road.

2.    The replacement of the dashboard can cost several thousand dollars. Nissan has refused to cover the cost of repairs.

3.    Nissan's conduct violates Florida's Deceptive and Unfair Trade Practices Act. On behalf of himself and the proposed class, Plaintiff seeks to compel Nissan to warn drivers

1

about the known defect and to bear the expense of replacing dashboards that should never have been placed in the stream of commerce in the first place.

## PARTIES

4. Plaintiff is a citizen and resident of Naples, Florida.

5. Defendant Nissan North America, Inc. has its headquarters and principal place of business in Franklin, Tennessee. Nissan North America, Inc. is the U.S. subsidiary of Nissan Motor Company, Ltd., which is a company that has its headquarters in Japan. Nissan North America, Inc. and Nissan Motor Company, Ltd. shall collectively be known as "Nissan" or "Defendant."

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. 1332(d). There are at least 100 members in the proposed plaintiff class, the aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which Nissan and class members are citizens of different states

7. This Court may exercise jurisdiction over Nissan because Nissan is registered to conduct business in Florida; has sufficient minimum contacts in Florida; and intentionally avails itself of the markets within Florida through the promotion, sale, marketing, and distribution of its vehicles, thus rendering the exercise of jurisdiction by this Court proper and necessary. Moreover, Nissan's wrongful conduct (as described below) foreseeably affects consumers in Florida.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Moreover, a related class action is pending in this District, *Sanborn v. Nissan North America, Inc.*, Case No.: 0:14-cv-62567 (KMM)(the "Sanborn Action"), on behalf of owners and lessees of Nissan 2008 and 2009 Altima and Infiniti models which also suffer from the same defective melting dashboard. A class action settlement in the Sanborn Action has received preliminary approval and the final approval hearing is scheduled for January 5, 2017.

## SUBSTANTIVE ALLEGATIONS

9. Nissan North American, Inc. manufactures, markets, distributes, and warrants automobiles in the United States, including the Nissan GT-R. This lawsuit concerns the Nissan GT-R vehicles from 2008 to the present.

### The Nissan GT-R Dashboard Defect

10. The Nissan GT-Rs (the "Class Vehicles") have defective dashboards that melt and crack when exposed to sunlight.

11. The melted (and melting) dashboards produce a noxious chemical smell and ooze a chemical compound that is sticky to the touch. The dashboards also deform, crack, and tear, causing the dashboards in Class Vehicles to become reflective, resulting in unpredictable glare being cast onto the windshield and into the drivers' eyes. This makes it difficult and sometimes impossible to see and safely operate the vehicle, putting drivers, passengers, and others on the road at risk. Only a moment of obstructed vision can prevent the driver from seeing and responding to hazards.

12. Additionally, the degraded dashboard makes it more likely that the passenger-side airbags will not properly deploy. These airbags deploy through precisely designed perforations

in the dashboard. The makeup of the dashboard is of great importance to ensure that the airbag releases properly. However, the defects in the dashboards in Class Vehicles alter the design of the dashboards and thus raise the likelihood that in the event of a collision, the airbag will not release as designed.

### NISSAN'S KNOWLEDGE OF THE DEFECT AND THE DANGERS POSED

13. Nissan knew or should have known when it sold the Class Vehicles that the dashboards would not hold up to prolonged exposure to sunlight and that the result would be an unsafe condition for drivers.

14. Nissan is, and has been, aware for decades that dashboard reflections can and do impair drivers' vision and can make it harder to see pedestrians and objects on the road. First, common sense dictates that this is so. Additionally, a paper published in 1996 by researchers for the University of Michigan Transportation Research Institute found that when a dashboard casts a reflection in the windshield it can impair the drive's vision. *See* Schumann, Josef, Daytime Veiling and Driver Visual Performance: Influence of Windshield Rake Angle and Dashboard Reflectance, *The University of Michigan Transportation Research Institute* (1996).

15. Furthermore, recalls relating to obstructions of a driver's vision are nothing new, including for Nissan. In 1998, there were several recalls for defective windshield wipers in Nissan 200sx cars because when windshield wipers did not clean the glass of the windshield and the a driver's vision could be obstructed.[1] Ford experienced recalls because of bubbles that formed on the windshield in higher temperatures, which could also obstruct

---

[1] http://www.automd.com/recall/nissan_m/200sx_mm/

drivers' vision.[2] Similar to these prior recalls, the Class Vehicles' melting dashboards pose a safety hazard to drivers because they can obstruct a driver's vision.

16. Nissan became aware of complaints in at least 2006 that the dashboards in certain Infiniti vehicles, which is the luxury line of vehicles owned and produced by Nissan, were melting and degrading. Nissan ultimately extended the warranty for those vehicles, covering dashboard degradation for up to 8 years in 2003-2008 FX 35 and FX45 vehicles.

17. Despite Nissan's knowledge in at least 2006 that its Infiniti dashboards melted and degraded with exposure to sunlight, Nissan continued to install the same dashboards that melt when exposed to sunlight in its vehicles, including the Nissan GT-Rs. Furthermore, Nissan never extended its warranty to drivers of vehicles with melting dashboards in the Nissan GT-Rs.

18. Given the composition of the dashboards in Class Vehicles and its experience with its Infiniti line of vehicles, Nissan knew or should have known that the dashboards would melt and crack with exposure to sunlight. Nissan nonetheless sold Class Vehicles without altering the dashboards, putting Nissan drivers, passengers, and others on the road at risk. Nissan withheld information of its melting and cracking dashboards from its customers or dealers. Nissan had exclusive and superior knowledge of the dashboard defect and actively concealed the defect and corresponding danger from consumers, who had no way to reasonably discover the problem before buying and driving their vehicles.

19. Had consumers been aware of the dashboard defect in their vehicles, they would not have purchased their vehicles or would have paid far less money for them. As Nissan knows, a reasonable person would consider the dashboard defect important and would

---

[2] http://www.ncconsumer.org/news-articles/ford-recalls-e-series-vehicles-with-windshield-defect.html.

not purchase or lease a vehicle with a potentially defective dashboard or would pay substantially less for the vehicle.

20. Although there have been numerous complaints about the dashboards through the NHTSA website (which Nissan monitors) and made directly to Nissan customer service, Nissan continues to deny the existence of a safety defect. The Nissan melting dashboard was also discussed in a Florida ABC-affiliate news segment, which showed pictures of the glare that drivers experience from their melting dashboards. In response to the news report about the dashboard defect, Nissan stated: "We have become aware of a few isolated consumer complaints about the dashboard appearance in their vehicle."

## Nissan's Refusal to Repair the Defective Dashboards

21. Despite the large amount of evidence that Nissan has had about the safety risk that melting dashboards pose, Nissan has refused to notify its customers of the dashboard safety defect or to cover the full costs of repairs for the Class Vehicles. The total for parts and labor to replace a dashboard is approximately $2,000, depending on the location of the Nissan dealership.

22. Nissan's refusal to pay for the complete cost of dashboard repairs has caused damages to Nissan owners. Drivers are generally either forced to pay approximately $2,000 to correct an issue of which Nissan was aware but withheld from the drivers or otherwise must simply continue to drive unsafe cars and risk getting into an accident because the cost may be too high. The dashboard issues further cause the resale value of the cars to plummet.

Upon attempting to sell the impacted cars, Nissan owners must generally accept a steep discount due to the dashboard defect that was hidden from them upon their purchase.

### Plaintiff's Experience

23.     Plaintiff Neil Heuer purchased a new 2009 Nissan GT-R from a Nissan dealership located at 3640 Pine Ridge Road in Naples, Florida in approximately October 2008. As part of the sale transaction, Plaintiff received brochures about the Nissan GT-R. None of the materials Plaintiff viewed prior to or during the sale transaction disclosed that the dashboard would melt and degrade with exposure to sunlight, resulting in a dangerous glare on the windshield.

24.     In or around June 2016, the dashboard in Plaintiff's car began to melt. The melting dashboard causes a harsh glare on the windshield that obscures the driver's vision. The glare from the dashboard presents a safety hazard.

25.     In or around August, 2016, Plaintiff took his car into a Nissan dealership located at 3640 Pine Ridge Road in Naples, Florida, and asked that Nissan replace the dashboard. Plaintiff and the Nissan dealership both were aware of the related class action, *Sanborn v. Nissan North America, Inc.*, Case No.: 0:14-cv-62567 (KMM)(S.D. Fla.), in which owners of the Nissan 2008 and 2009 Altima and Infiniti models had complained about the same melting dashboard problems, and as part of the class action settlement which had received preliminary approval, were entitled to have their dashboards replaced at a steeply discounted price of $250. Nevertheless, the Nissan dealership told Plaintiff that it was not able to replace his melting dashboard free of charge or at the reduced rate and that it would cost Plaintiff approximately $2,000 for Nissan to replace the dashboard.

## CLASS ACTION ALLEGATIONS

26. Plaintiff seeks to represent the class set forth below, within which "Class Vehicle" is defined to include all Nissan GT-R vehicles from 2008 to present. Plaintiff proposes to represent a Class comprised of: "All persons who purchased or leased a Class Vehicle in Florida."

27. Excluded from the proposed class is Nissan; any affiliate, parent, or subsidiary of Nissan; any entity in which Nissan has a controlling interest; any officer, director, or employee of Nissan; any successor or assign of Nissan; anyone employed by counsel for Plaintiffs in this action; any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons; and anyone who purchased a Class Vehicle for the purpose of resale.

28. This action has been brought and may properly be maintained on behalf of the Class proposed above under the criteria of Federal Rule of Civil Procedure Rule 23.

29. Numerosity. Nissan sold over 10,000 Class Vehicles, including a substantial number in Florida. Members of the proposed class likely number in the hundreds or thousands and are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

30. Existence and predominance of common questions. Common questions of law and fact exist as to all members of the proposed class and predominate over questions affecting only individual class members. These common questions include:

    a. Whether Class Vehicles were factory equipped with defective dashboards;

    b. Whether Nissan knew or should have known about the dashboard

       defect and, if so, when Nissan discovered the defect;

   c.   Whether the existence of the dashboard defect would be important to a reasonable person, for example, because it poses an unreasonable safety risk;

   d.   Whether Nissan disclosed the dashboard defect to potential customers; and

   e.   Whether Nissan dealerships have failed to provide free dashboard repairs for Class Vehicles.

31. **Typicality.** Plaintiff's claims are typical of the claims of the proposed class. Plaintiff and the members of the proposed Class purchased or leased a Class Vehicle that contains the same defective dashboard, giving rise to substantially the same state and federal claims.

32. **Adequacy.** Plaintiff is an adequate representative of the proposed Class; his interests do not conflict with the interests of the members of the Class he seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. The interests of members of the class will be fairly and adequately protected by Plaintiff and his counsel.

33. **Superiority.** The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Nissan economically feasible. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the Nissan defect, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system

presented by the legal and factual issues of the case. By contrast, the Class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

34. In the alternative, the proposed Class may be certified because:

   a. the prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual class members which would establish incompatible standards of conduct for Nissan;

   b. the prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

   c. Nissan has acted or refused to act on grounds generally applicable to the proposed class, thereby making appropriate final and injunctive relief with respect to the members of the proposed class as a whole.

### FIRST CAUSE OF ACTION
### On Behalf of the Class
### Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*

35. Plaintiff, on behalf of himself and the putative Class, hereby re-alleges the paragraphs above.

36. The purpose of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 *et seq.*, is to "protect the consuming public…from those who engage in unfair

methods of competition, or unconscionable, deceptive or unfair acts or practice in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

37. Plaintiff and Class members are "consumers" within the meaning of Fla. Stat. §501.203(7).

38. At all relevant times, Nissan was engaged in trade or commerce within the meaning of Fla. Stat. §501.203(8).

39. Nissan has violated Florida's Deceptive and Unfair Trade Practices Act by failing to disclose, at the point of sale or otherwise, that the dashboard in Class Vehicles is defective and poses a safety hazard. This conduct offends public policy and is unethical, unscrupulous, and substantially injurious to consumers.

40. As a direct and proximate result of Nissan's conduct, Plaintiff and other members of the Class have been harmed in that they purchased Class Vehicles they otherwise would not have, paid more for Class Vehicles than they otherwise would, paid for dashboard diagnoses, repairs, and replacements, and/or rental cars, and are left with Class Vehicles of diminished value and utility because of the defect. Nissan has sold more Class Vehicles than it otherwise could have, had it disclosed the melting dashboard defect, and charged inflated prices for Class Vehicles, thereby unjustly enriching itself thereby.

41. Pursuant to Fla. Stat. §501.211, Plaintiff and the Class seek damages, a declaratory judgment, and an order requiring Nissan to adequately disclose and repair the dashboard defect.

## SECOND CAUSE OF ACTION
### Plead In the Alternative On Behalf of a Class
### Unjust Enrichment

42. Plaintiff, on behalf of himself and the putative Class, hereby re-alleges paragraphs 1-34 above.

43. Plaintiff pleads this second cause of action in the alternative to his first cause of action.

44. Plaintiff brings this claim individually and on behalf of the Class.

45. Plaintiff and Class members have conferred non-gratuitous benefits on Defendant by purchasing and leasing Class Vehicles, reasonably expecting to receive a vehicle that was free of defects.

46. Defendant has knowledge of, and accepted and retained, the benefits conferred.

47. The Class Vehicles purchased and used by Plaintiff and Class members contained defective dashboards, and Plaintiff and Class members would not have paid money for their vehicles, or would have paid substantially less for their vehicles had they been aware that their vehicles had defective dashboards. Under the circumstances, it would be inequitable for Defendant to retain the benefit conferred without compensating Plaintiff and Class members.

48. Plaintiff requests that this Court enter judgment in his favor, and the members of the Class, for disgorgement and restitution of the benefits conferred on Defendant, including wrongful profits and revenues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a. For an order certifying the proposed class and appointing Plaintiff as class

<008>

representative and his counsel as class counsel;

b. For an order awarding Plaintiff and the members of the Class actual damages or any other form of damages provided by and pursuant to the statute cited above;

c. For an order awarding Plaintiff and the members of the class restitution, disgorgement or other equitable relief as the Court deems proper;

d. For an order requiring Nissan to adequately disclose and repair the dashboard defect;

e. For an order awarding Plaintiff and the members of the Class pre-judgment and post- judgment interest;

f. For an order awarding Plaintiff and the members of the Class reasonable attorneys' fees and costs of suit, including expert witness fees; and

g. For an order awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: January 4, 2017                     Respectfully Submitted,

**KOMLOSSY LAW P.A.**

By: /s/ Emily Komlossy, Esq.
Ross Appel, Esq. (FBN 90865)
raa@komlossylaw.com
Emily Komlossy, Esq. (FBN7714)
eck@komlossylaw.com
4700 Sheridan Street, Suite J
Hollywood, Florida 33021
Tel: (954) 842-2021
Fax: (954) 416-6223

Oren Giskan, Esq.
ogiskand@gslawny.com

                                        Catherine E. Anderson, Esq.
                                        canderson@gslawny.com
                                        **GISKAN SOLOTAROFF,**
                                        **& ANDERSON LLP**
                                        217 Centre Street, 6th Floor
                                        New York, NY 10013
                                        Telephone: (212) 847-8315
                                        Facsimile: (646) 520-3236
                                        Cory L. Zajdel, Esq.
                                        clz@zlawmaryland.com
                                        **Z LAW, LLC**
                                        2354 York Road, Ste. B-13
                                      Timonium, MD 21093
                                      Telephone: (443) 213-1977

                                      *Attorneys for Plaintiff and the Proposed Class*